1  Michael F. Ram, SBN 104805
   mram@forthepeople.com
2  Colin Losey, SBN 352223
   colin.losey@forthepeople.com
3  MORGAN & MORGAN
   COMPLEX LITIGATION GROUP
4  711 Van Ness Avenue, Suite 500
   San Francisco, CA 94102
5  Telephone: (415) 846-3862
6  Facsimile: (415) 358-6923

7  Jeffrey B. Cereghino, SBN 99480
   jbc@cereghinolaw.com
8  CEREGHINO LAW GROUP LLP
   737 Bryant Street
9  San Francisco, CA 94107
10 Telephone: (415) 433-4949
   Facsimile: (415) 433-7311
11
   *Attorneys for Plaintiff*
12
   [Additional Counsel on Signature Page]
13

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 1625 RIVIERA HOMEOWNERS' ASSOCIATION, on behalf of itself and all others similarly situated, | No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| UPONOR, INC. and DOES 1 through 200, inclusive, | |
| Defendant. | |

1

CLASS ACTION COMPLAINT

Plaintiff, 1625 Riviera Homeowners Association, and all others similarly situated file this class action complaint against Defendant UPONOR, INC ("Uponor").

## INTRODUCTION

1. This is a class action for damages and other relief on behalf of all incorporated condominium common interest developments and co-ops similarly situated in the United States (the "Class") and the State of California (the "Sub-Class") that have installed, in their common area and separate property, red-colored or blue-colored, or both, cross-linked-polyethylene tubing (PEX) for potable water systems.

2. Defendant designs, develops, tests, manufactures, advertises, sells, warrants, and distributes PEX pipe, throughout the United States, for installation in homes and other structures.

3. Plaintiff is a multi-unit condominium located in Walnut Creek, California. It has Uponor PEX pipe installed for use as a potable water system. Plaintiff has suffered multiple leaks from cracks and pinholes in the pipes. These leaks are often latent, concealed, and/or located behind walls; this delays discovery and enhances damage.

## JURISDICTION

4. This Court has jurisdiction over this matter under 28 U.S.C. § 1332(b)(2) because (1) this is a class action with more than one hundred (100) Class Members and Sub-Class Members; (2) Uponor's headquarters is in the State of Minnesota; (3) Plaintiff and all Class Members and Sub-Class Members are domiciled in various states in the United States; and (4) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

## VENUE

5. Venue in this Court is proper pursuant to 28 U.S.C.: (1) § 1391(b)(1) because Defendant resides in this District and (2) § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

6. Plaintiff, 1625 Riviera Homeowners Association (the "Association"), is a common interest development consisting of 48 condominiums and common areas in Walnut Creek,

California. (The "Project"). Plaintiff is responsible for preserving, maintaining, and managing the Project's common areas and common facilities and, to the extent provided in Plaintiff's governing documents, for providing repair and maintenance services to individual residences. The Association was established by the Developer of the Project, and, upon sale of the first condominium, control of the property was conveyed to Plaintiff.

**ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATION AS A DEFENSE**

7. Defendant knowingly and actively concealed and failed to disclose relevant information, related to the defective nature of the Uponor PEX pipe, to Plaintiff, the Class, and the Sub-Class.

8. Defendant responded to warranty claims by concealing the Uponor PEX pipe's defective nature and instead blaming the claimant or the installers for the problem.

9. Plaintiff and the Class and the Sub-Class could not, with the exercise of due diligence, have discovered the true defective nature of the UPONOR PEX pipe until informed by Plaintiff's counsel within the last year, and therefore any applicable statutes of limitation are tolled by Defendant's conduct.

**FACTUAL ALLEGATIONS**

10. Plaintiff is managed by a Board of Directors, which is the governing body of the Association. Plaintiff controls, manages, maintains, and repairs the common area. Plaintiff does not own the common area. The common area, or Association property, includes every part of the buildings: parking; lobby; roofs; clubroom; building structure; and all utility systems, including plumbing systems.

11. The condominium owners own their separate interests–which are essentially the interior walls, ceilings, and floors of their individual unit–and 1/48 interest in the common area. The owners can neither modify, change, nor control the common area, and they can neither lease, assign, nor sever their own separate interest. They do not have standing to bring any claim for common area issues, such as defects in the plumbing system, because they own the common area.

12. The Project was developed by Development Solutions Riv LLC. The Project was built by a general contractor, who retained a plumbing sub-contractor, who bought Uponor AquaPEX pipe from a plumbing supply house, which bought the pipe from Uponor or a distributor. Plaintiff never bought any pipe from Uponor. Plaintiff thus received no warranty from Uponor. Plaintiff made no warranty claim to Uponor. Plaintiff received no warranty, related to the plumbing systems, from anyone.

13. Uponor manufactures, markets, and sells plastic piping for potable water supply called AquaPEX. It comes in three colors: Red, Blue, and White. This case involves Red and Blue AquaPEX pipes that have reported failures similar to the Red AquaPEX pipe failures experienced by Plaintiff.

14. Uponor manufactured AquaPEX pipe from approximately 2010 to 2021. Plaintiff is informed and believes that UPONOR no longer manufactures the AquaPEX product because it is defective.

15. PEX is an acronym for cross-linked polyethylene. PEX is a popular product because of its advertised flexibility and ease of installation. PEX piping is commonly either blue or red to facilitate identification for its installed purpose: either hot (red) or cold (blue) water line.

16. Uponor AquaPEX (PEX) prematurely degrades, prematurely deteriorates, and prematurely cracks. This results in pinhole leaks, manifesting within the interiors of Plaintiff's common area walls and members' units.

17. Plaintiff is informed and believes that other manufacturers of PEX pipe add antioxidant stabilizers to the plastic formulation.

18. PEX is susceptible to degradation when exposed to oxygen. This oxidation can lead to the material's degradation, causing cracks and, ultimately, pipe failure.

19. Antioxidants interrupt chain reaction oxidation by scavenging free radicals: the highly reactive molecules that initiate this process. Neutralizing these free radicals prevents further degradation and helps maintain the material properties of the PEX piping.

20. However, if the antioxidants are depleted, the PEX pipe becomes vulnerable to

1  embrittlement, to cracking, and to leaks and to failures that are premature.

2  21. After extrusion, Uponor, unlike other manufacturers of PEX pipe, adds a red or blue coating to the tubing's outside surface. Coatings do not stick to PEX, so Defendant patented a process that involves conveying the PEX tubing "through an oxidizing step in which at least the outer surface of the base pipe is oxidized, through a coating step in which a pre-polymer system is applied to the outer surface of the base pipe and through a curing step in which the pre-polymer is cured to form a layer of pipe." Uponor Innovation AB, Frista(SE), Appl. NO. 12/572,683, Filed Oct.2, 2009).

22. The above-described process subjects the pipe to a flame treatment that oxidizes/burns the outside of that pipe to apply the coating. This: (a) improves adhesion of the polymers prior to application of coating and adhesive; (b) damages the antioxidants on the outside of the PEX tubing; and (c) primes the tubing for premature failure, which manifests in micro-cracking, leaks, cracks, and property damage.

23. Because the Uponor PEX pipe's outside surface becomes depleted of antioxidants after exposure flames, that outside surface becomes progressively brittle and develops microcracks as the tubing expands during installation. This degradation and embrittlement continues over time. It damages the tubing, and cracks continue to propagate through the wall of the tubing. This causes water leaks and resultant damage to property, loss of use of the plumbing system, and/or loss of the intended use of the system.

24. Uponor represented that, as of 2016, it had produced 5 billion feet of PEX pipe for homes and commercial structures throughout the United States.

25. Uponor represented that it sold one-third of all the PEX sold in the United States.

26. Uponor designed, manufactured, advertised/marketed, distributed, and sold Uponor PEX pipe for use in water plumbing systems throughout the United States. These systems included, but were not limited to, Plaintiff's multi-family structure and other multi-family structures owned or established as common interest developments.

CLASS ACTION COMPLAINT

27. Uponor repeatedly represented to builders, developers, design professionals, plumbing supply retailers and wholesalers, and plumbing contractors that, as represented in Uponor's sale catalog, Uponor PEX was the highest quality PEX tubing available and that its cross-chemical bonding process gave it "superior characteristics."

28. Uponor intended that builders, developers, design professionals, plumbing supply retailers and wholesalers, and plumbing contractors would rely upon its representations. Uponor further intended that builders, developers, design professionals, plumbing supply retailers and wholesalers, and plumbing contractors would rely upon its representations and general manufacturing quality controls and designs and purchase Uponor product for resale, distribution, or use in multi-family project such as common interest developments, co-ops, or apartment buildings. Ultimately Uponor's business model was predicated on marketing its products for installation and use in the homes of third parties and multi-family structures.

29. Contrary to Uponor's statements, Uponor PEX has inherent manufacturing and design defects that cause the pipe to fail, causing property damage. Plaintiff has suffered multiple "pinhole" leaks in walls. These leaks are only discovered when they have caused sufficient damage to manifest on the exterior wall elements such as sheet rock.

30. As a result of this defect, Uponor PEX is predisposed to premature oxidative failure; this causes leaks and loss of use, wall cracking, and other failures and property damage. The defect reduces the normal and expected useful life of the installed pipe. This requires replacement in Plaintiff's property and Class and Sub-Class structures.

31. Uponor failed to take appropriate steps to ensure that its products were suitable for their intended use before placing them in the marketplace and the stream of commerce.

32. Uponor knew or should have known that Uponor PEX was not suitable for its intended use in potable water systems, suffered from the defect, and caused the damages alleged in this complaint.

33. In approximately September 2023, Plaintiff discovered a leak in an Uponor PEX pipe. The leak was at neither a fitting nor a joint, rather it was at the run of the pipe. Since then,

CLASS ACTION COMPLAINT

1  seven to ten leaks, at the cost of approximately $20,000 per leak to repair, have been discovered.

2  34. Uponor PEX pipe is primarily installed inside walls; a small portion of pipe exits walls below sinks or other plumbing fixtures. The natural consequence of a pinhole leak inside a wall is damage to surrounding building elements such as sheetrock, insulation, and framing members. The repair and replacement of Class and Sub-Class member Uponor AquaPEX piping systems will necessarily damage other building components. There is no way to remove piping inside condominium walls without opening the walls. Each and every Class and Sub-Class Member will suffer similar damage during the reasonable life of the pipe.

35. Plaintiff and the Class and Sub-Class have been damaged and will continue to suffer damages from the failure of the Uponor PEX potable piping system. Leaks have already occurred and will continue to occur as the pipe deteriorates. The Plaintiff and the Class are not at fault for any of the damages alleged here.

36. Uponor, in or about 2021, discontinued the manufacture, distribution, and sale of AquaPEX red and blue PEX pipe. Plaintiff is informed and believes that this discontinuation was due to a large number of defect claims. Uponor stated that the product was "discontinued." Uponor did not disclose the defect.

37. Plaintiff and the Class and Sub-Class seek damages from Uponor for the cost to replace the defective pipe in their structures and compensation for expenses associated with property damage resulting from pipe leaks.

38. Restitution and/or injunctive relief may be more certain, prompt, and efficient than legal remedies.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements set forth in Rule 23(a) and Rule 23(b)(3).

40.    Plaintiff advances this action on behalf of the following Class and Sub-Class:

### Class

All incorporated condominium common interest developments ("CIDs") in the United States that: (1) own or owned properties with Uponor Aqua-PEX potable water systems—which failed, degraded, or leaked from January 1, 2010, to the date of class notice and (2) did not make a warranty claim to Defendant. Excluded from the Class are: (1) Uponor; (2) its legal representatives, assigns, and successors; (3) any entity in which Uponor has a controlling interest; (4) the judge to whom this case is assigned; and (5) any member of the judge's immediate family and judicial staff.

### Sub-Class

All incorporated condominium common interest developments ("CIDs") in the State of California that: (1) own or owned properties with Uponor Aqua-PEX potable water systems—which failed, degraded, or leaked from January 1, 2010, to the date of class notice and (2) did not make a warranty claim to Defendant. Excluded from the Class are: (1) UPONOR; (2) its legal representatives, assigns, and successors; (3) any entity in which UPONOR has a controlling interest; (4) the judge to whom this case is assigned; and (5) any member of the judge's immediate family and judicial staff.

41.    <u>Numerosity (Rule 23(a)(1))</u>. Plaintiff is informed and believes that the Class is comprised of approximately 100,000 condominium and co-op multi-family projects in the United States. The disposition of the claims of these Class Members in a single class action will provide substantial benefits to all parties and to the Court.

42.    <u>Commonality (Rule 23(a)(2))</u>. There are questions of law and fact common to all Class and Sub-Class Members. Common questions include, but are not limited to:

    a.    Whether Uponor's PEX pipe was suitable for its intended use in potable water systems,

    b.    Whether Uponor's PEX pipe was defectively designed,

    c.    Whether Uponor PEX pipe was defectively manufactured,

    d.    Whether Uponor failed to disclose to Plaintiff, Class Members, Sub-Class Members, and the construction trades its knowledge of defects in AquaPEX

pipe,

e. Whether Uponor continued to manufacture and to sell AquaPEX pipe after it became aware of numerous consumer claims regarding defects in its AquaPex pipe,

f. Whether Uponor had a duty to disclose the defective nature of its AquaPEX pipe to Plaintiff, the Class, and the Sub-Class,

g. Whether Uponor violated the unfair prong of California Business and Professions Code section 17200, and

h. Whether the facts not disclosed–by Uponor and to Plaintiff, Class Members, and Sub-Class Members–are material.

43. <u>Typicality (Rule 23(a)(3))</u>. The claims of the representative Plaintiff are typical of the claims of Class and Sub-Class Members; representative Plaintiff, like all Class and Sub-Class Members, is a condominium with Uponor PEX pipe installed in its property and used as its potable water system. The representative Plaintiff, like all Class and Sub-Class Members, has suffered a common injury: Uponor PEX has leaked multiple times since installation. The water leaks have caused property damage. The factual basis of Uponor's misconduct is common to all Class and Sub-Class Members.

44. <u>Adequacy (Rule 23(a)(4))</u>. Plaintiff will fairly and adequately represent and protect the interests of the Class and the Sub-Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions; this experience includes actions involving issues similar to those raised in this case. Plaintiff and its counsel are committed to prosecuting this action vigorously on behalf of the Class and the Sub-Class and have the financial resources to do so. Neither Plaintiff nor their counsel have any interest adverse to those of the Class or the Sub-Class.

45. <u>Predominance of Common Questions (Rule 23(b)(3))</u>. Common questions of law and/or fact predominate over questions involving individualized analysis. Fundamentally, there is no material question of fact or law that is not common to Class and Sub-Class Members. Common issues of fact include that all Class and Sub-Class Members have Uponor PEX pipe installed in

their projects and all Class and Sub-Class Members' Uponor PEX pipes were manufactured using the same design, the same manufacturing process, and sold with the same installation instructions. All Class and Sub-Class Members live in multi-family projects. All Class and Sub-Class Members purchased their homes in projects built by third parties, who relied upon advertising, representations, or general industry perception of quality that Uponor PEX pipes were fit for their intended purpose and would not prematurely fail and leak. Common questions of law include whether Uponor's conduct violates California's consumer protection statutes and other la, and the Class and Sub-Class Members' entitlement to damages and to remedies.

46.     <u>Superiority (Rule 23(b)(3))</u>. Plaintiff and Class and Sub-Class Members have all suffered and will continue to suffer harm and to suffer damages because of Uponor's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the subject controversy. Because of the number of impacted Class and Sub-Class Members, and the cost of litigation, most Class and Sub-Class Members likely would find the cost of litigating individual claims to be prohibitive. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation because it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. There is no impediment to the management of this action because the common questions of law and fact to all Class and Sub-Class Members are virtually identical.

**FIRST COUNT**

**(Unjust Enrichment)**

47.     Plaintiffs re-allege and incorporate by reference each preceding paragraph.

48.     As the intended and expected result of its conscious wrongdoing, Defendant has profited and benefited from the sale and installation, in the structures of Plaintiff, the Class, and the Sub-Class, of its PEX products. Plaintiff's, Class Members', and Sub-Class Members' payments for the structures with Uponor PEX ultimately flowed to Defendant.

CLASS ACTION COMPLAINT

49. Defendant has accepted and retained these profits–derived from Plaintiff, the Class, and the Sub-Class–with knowledge that, as a result of its misconduct, Plaintiff, the Class, and the Sub-Class were not receiving products of the quality, nature, fitness, and/or value that had been represented, by Defendant and to the construction trades, and that Plaintiff, the Class, and the Sub-Class, as reasonable consumers, expected.

50. Defendant has been unjustly enriched by its withholding of benefits from Plaintiff, the Class, and the Sub-Class. This occurred at the expense of Plaintiff, the Class, and the Sub-Class.

51. Defendant's retention of these profits and benefits is inequitable.

52. Plaintiff, the Class, and the Sub-Class seek the disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits, plus interest, to the extent and in the amount deemed appropriate by the Court. Plaintiff, the Class, and the Sub-Class also seek such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

## SECOND COUNT

**(Negligence)**

53. Plaintiffs re-allege and incorporate by reference each preceding paragraphs.

54. Uponor owed Plaintiff, Class Members, and Sub-Class Members a duty to exercise reasonable care and to exercise ordinary care in the testing, design, manufacture, distribution, advertising, and sale of the Uponor PEX pipe, installed in Plaintiff's, Class Members', and Sub-Class Members' buildings.

55. Uponor knew or should have known that Plaintiff, the Class, and the Sub-Class would be damaged by the installation of a defective AquaPEX pipe in the structures the Plaintiff, the Class, and the Sub-Class were and are obligated to maintain and to repair.

56. Uponor failed to test, to design, to manufacture, and to draft installation instructions adequately. So, the PEX pipe installed in Plaintiff, Class Members', and Sub-Class Members' structures is prematurely deteriorating and failing.

57. Uponor's negligence is a substantial factor in causing the damages alleged here.

Repair and replacement of the defective PEX pipe necessarily causes damage to other building components.

58. Plaintiff, the Class, and the Sub-Class are entitled to full removal and replacement of the defective PEX pipe in their structures as a consequence of Uponor's conduct and breach of its duty.

## THIRD COUNT

### (Strict Product Liability)

59. Plaintiffs re-allege and incorporate by reference each preceding and paragraph.

60. During the Class Period and the Sub-Class Period, Uponor has been engaged in designing, manufacturing, developing, promoting, advertising, marketing, selling, and creating installation specifications for Uponor PEX pipe.

61. Uponor had full control of the PEX pipe when it left its distribution warehouses. Uponor provided instruction, for the proper storage and installation of its pipe, to wholesalers, retailers, and installers. When the pipe left Uponor's control, it was unsuitable for installation in potable water systems because it would prematurely deteriorate, resulting in pinhole leaks that may not be discovered for an extended period of time. This causes damage to building structural components and health hazards such as toxic mold. It also causes other damaging consequences of interior slow leaks.

62. Uponor's business is developing, designing, and manufacturing products suitable for their intended use. Plaintiff, the Class, and the Sub-Class relied upon Uponor's knowledge and expertise, in the field of design and manufacture, to design and to manufacture a pipe that would neither deteriorate, crack, leak, nor fail.

63. Uponor knew that its product would be installed in Plaintiff's, Class Members' and Sub-Class Members' structures.

64. As a direct and proximate cause of Uponor's actions, practices, and conduct, Plaintiff, Class Members, and Sub-Class Members have suffered damage.

# FOURTH COUNT

**(Violations of California Unfair Competition Law; Cal. Bus. & Prof. Code § 17200, et seq.)**

65. Plaintiff realleges and incorporates by reference all paragraphs of this Class Action Complaint as if set forth herein.

66. Uponor PEX pipe is defective in that it prematurely degrades and leaks. Plaintiff has it in its structural common areas.

67. Uponor knew that that pipe suffered from inherent defects, was defectively designed or manufactured, would fail prematurely, and was not suitable for its intended use.

68. Had Uponor made public disclosures that its PEX pipe prematurely degrades and leaks, that pipe never would have ended up in Plaintiff's structure's common areas.

69. California Business & Professions Code section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

70. Within four (4) years preceding the filing of this Class Action Complaint, and at all times mentioned herein, Uponor has engaged, and continues to engage, in unfair, unlawful, and/or deceptive trade practices in California by engaging in the unfair, deceptive, and/or unlawful business practices described in this Class Action Complaint. Uponor did so by, without limitation, doing the following. Uponor sold the above-discussed defective PEX pipe without any disclosures that it prematurely degraded and leaked. That Uponor's PEX pipes were defective in this way was and is material; a reasonable person would have considered and would consider those facts to be important in deciding whether to purchase Uponor PEX pipe. When an entity sells new pipe that prematurely degrades and leaks, but that entity makes no disclosures about that premature degradation and leaking, reasonable consumers would be deceived.

71. In failing to disclose the defects in its PEX pipes, Uponor has knowingly and intentionally concealed material facts and breached their duty not to do so.

72. Uponor was under a duty to the public to disclose the defective nature of its PEX pipes because Uponor was in a superior position to know the true state of facts about the defects

in its PEX pipes.

73. By its conduct, Uponor has engaged in unfair competition and unfair business practices.

74. Uponor's acts and/or omissions were and are likely to deceive the general public.

75. Uponor's unfair acts or practices occurred repeatedly in its trade or business and were and are capable of deceiving a substantial portion of the public.

76. Uponor engaged in these unfair practices to increase their profits. Uponor has engaged in unlawful trade practices, as defined and prohibited by section 17200, et seq. of the California Business and Professions Code.

77. The aforementioned practices, which Uponor has used to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Uponor's competitors as well as injury to the general public.

78. As a direct and proximate result of such actions, Plaintiff and the other members of the class and the sub-class have suffered and continue to suffer injury in fact, and they have lost money and/or property as a result of such deceptive, unfair, and/or unlawful trade practices and/or unfair competition in an amount that will be proven at trial.

79. As a direct and proximate result of such actions, Uponor has enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial.

80. Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Uponor from continuing to engage in the unfair trade practices complained of herein.

81. The acts complained of herein occurred, at least in part, within four (4) years preceding the filing of this Class Action Complaint.

82. Plaintiff and those similarly situated are further entitled to seek, and do seek, both a declaration that the above-described trade practices are unfair, unlawful, and/or fraudulent and injunctive relief restraining Uponor from engaging in any of such deceptive, unfair, and/or unlawful trade practices in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment against Uponor and in favor of Plaintiff and award the following relief:

1. Certification of a class consistent with the class definition contained in this Complaint and appointment of Plaintiff as class representative.

2. Certification of a sub-class consistent with the sub-class definition contained in this Complaint and appointment of Plaintiff as sub-class representative.

3. Appointment of the undersigned as counsel for that Class.

4. A declaration that Uponor is financially responsible for notifying all Class and/or Sub-Class Members of the pendency of this action and of the defect alleged.

5. An award to Plaintiff, the Class, and the Sub-Class of all costs to replace Uponor AquaPEX pipe in their structures and compensation for the cost of repairing damages, resulting from leaks.

6. An award of costs and attorneys' fees, as allowed by law, and/or from a common fund.

7. Leave to amend to conform to the evidence presented at trial; and

8. Orders granting such other and further relief as may be appropriate.

**JURY TRIAL DEMAND**

Plaintiff demand a jury trial for all individual and Class claims so triable.

Dated: August ___, 2025             Respectfully Submitted,

                                    By_____

                                    Michael F. Ram, SBN 104805
                                    mram@forthepeople.com
                                    Colin Losey, SBN 352223
                                    colin.losey@forthepeople.com
                                    MORGAN & MORGAN
                                    COMPLEX LITIGATION GROUP
                                    711 Van Ness Avenue, Suite 500
                                    San Francisco, CA 94102
                                    Telephone: (415) 846-3862

CLASS ACTION COMPLAINT

|   |   |
|---|---|
| 1 | Facsimile: (415) 358-6923 |
| 2 | Jeffrey B. Cereghino, SBN 99480 |
| 3 | jbc@cereghinolaw.com<br>CEREGHINO LAW GROUP LLP |
| 4 | 737 Bryant Street<br>San Francisco, CA 94107 |
| 5 | Telephone: (415) 433-4949<br>Facsimile: (415) 433-7311 |
| 6 | |
| 7 | Charles LaDuca*<br>Charles@cuneolaw.com |
| 8 | Brendan Thompson*<br>brendant@cuneolaw.com |
| 9 | CUNEO GILBERT & LaDUCA, LLP<br>2445 M Street, NW, Suite 740 |
| 10 | Washington, DC 20037<br>Telephone: (202) 789-3960 |
| 11 | Facsimile: (202) 789-1813 |
| 12 | Robert Shelquist* |
| 13 | Rshelquist@cuneolaw.com<br>CUNEO GILBERT & LaDUCA, LLP |
| 14 | 5775 Wayzata Blvd.<br>Suite 620 |
| 15 | St. Louis Park, MN 55416<br>(612) 254-7288 |
| 16 | |
| 17 | Colette F. Stone, SBN 129773<br>STONE & ASSOCIATES, APC |
| 18 | 2125 Ygnacio Valley Road, Ste. 101<br>Walnut Creek, CA 94596 |
| 19 | Office: (925) 938-1555<br>Direct: (925) 400-9612 |
| 20 | |
| 21 | J. Barton Goplerud*<br>SHINDLER, ANDERSON, GOPLERUD |
| 22 | & WEESE, PC<br>5015 Grand Ridge Drive, Suite 100 |
| 23 | West Des Moines, Iowa 50265<br>Ph: (515) 223-4567 |
| 24 | Fax: (515) 223-8887 |
| 25 | goplerud@sagwlaw.com |
| 26 | *Attorneys for Plaintiff* |
| 27 | *Pro hac vice pending |

16

CLASS ACTION COMPLAINT